Now we'll hear argument in United States v. Frye. Martin Vogelbaum from Mr. Quincy Frye, who as the Court knows has raised a number of questions on the suppression issue. And here I think there are a number of sort of convoluted little twists and turns, but essentially what it comes down to or where it begins is the notion that the testimony at the suppression hearing was not on the key point or what turned out to be the key point, which was the consent of Tiffany Granderson to enter her home to be factual in nature. The District Court relied on her verbal consent as authorizing the entrance of these officers to look for my client, but yet not one of these officers, when questioned closely, was actually able to give an accounting of Your argument seems to suggest that the officers have to remember the specific words that somebody used in granting consent in order for a court to make a finding that consent was given. How can we overturn that decision as clear error given that testimony? This is on page 5 of the opposition brief who testified explicitly. She said yes, you can come in. She said yes, she gave consent, and the District Court, the magistrate judge, made an explicit finding that consent was given. How can we overturn that decision as clear error given that testimony? So I think I want to, if I went that far, I would want to pull it back just a little bit to say that I don't think that it's an absolute prerequisite that somebody has to be able to recite every word with precision that the person said. But here what you have is a series of people, and certainly Your Honor is correct that ultimately they all say she consented, but when they're questioned closely, each of them says things to the effect of, well, I can't really remember what she said, or I don't remember the exchange. And you also have countervailing considerations. You have, you know, I think most strikingly, for example, the fact that, you know, two of the officers expressed quite a lot of surprise that Ms. Granderson, if it came down from her, landing perch at all to the front door because they were under the impression that she had simply disengaged from the situation. And then, of course, you have Officer Mack who says, you know, I wanted to ask her again before we actually got into the apartment because I've been around the block, which implies that he had some doubts about what was going on here. And then, of course, on top of that, you have... one of the court reviews for clear error is that the district court is in a better position to reconcile all of those ambiguities and make a factual finding. Here the district court made a factual finding. You're asking us to overturn that as clearly erroneous when three separate witnesses said explicitly that she gave consent. She said, yes, I just don't see how you overcome that. I understand that it's a difficult hill, but I guess what I'm getting at is I think that we don't actually have a wealth of facts about the verbal consent, really any consistent facts except for the claim that generally speaking she somehow gave consent without anybody being able to really even paraphrase it. And moving on from that, just to sum up that issue, because I do want to try to get to the other ones, we additionally have this other question of if that first entry is... if the court were to find that problematic, we then have this second entry where Mack, who expresses some reservations about the process, says, you know, I wanted to double up and check again. And, of course, by this point you also have the interceding consideration of Ms. Granderson's later case, which was even taken by CPS. Can you turn to the Rahafe issue? Given the evidence in the record that your client was convicted in 2012 and was on parole in 2015 and 2016, couldn't a jury infer from that evidence alone that he knew that he had been convicted of a felony? I actually don't think so, Judge. And I think that the average person, and frankly I was thinking about this even in terms of myself, before I went to law school, I didn't know... I certainly had no idea really about sort of what the range of punishments for various offenses was. I didn't know the difference between parole and probation or supervisory release. I didn't know the difference between going to jail and going to prison. That varies from state to state. In Massachusetts, where I used to practice, for example, there are misdemeanors that are punishable by up to two and a half years in county jail. So, yeah, the notion... oddly enough. But under 922, gee, that would qualify as a predicate offense. But what I'm suggesting is that I don't think that merely from the fact that somebody was on parole that a juror could infer from that and had previously been convicted and admitted that as of the day of trial they knew they had been convicted of being punished by a crime. What I'm positing is a chronology where they're convicted in 2012, that's what the stipulation said, and they're on supervision, the probationary officer testified from 2015 to 2016. An inference could therefore be drawn that the person was in jail for the three years between 2012 and 2015. And ergo, he knew that he was convicted of a crime punishable by more than one year because he served more than one year. But of course here also the jury was told that it's not just a question of sufficiency. They also were told that they needn't even consider that fact. So we would really be speculating about whether that inference was... But we're dealing with a plain error review, right? So we do have to consider whether your client was prejudiced and also whether it would affect the integrity and so forth of the system to allow the error to stand. I understand that. And I think that a juror would not necessarily... a juror could possibly... would not necessarily speculate about that conclusion, particularly since this is an individual who is on an ankle bracelet for a significant period of time. And it may have just been the impression that that was the form of the restraint that had been imposed. But moving on then, since I've got 20 seconds left here, to the final couple of points. We also have Ms. Granderson's lay opinion testimony, which was very damaging to Mr. Frye. Here you have a case in which there are seven people who have access to the area in which this gun was ultimately discovered. You have a number of different kinds of items in there. It's basically a depository for everybody's detritus, this room in which this gun is discovered. And there is no, obviously, Mr. Frye denied that the gun was his, and nobody reputedly saw him with the gun previously. In fact, the testimony was to the contrary. And so what you can see is what you have is this phone call which Ms. Granderson doesn't remember, doesn't have a personal recollection of, doesn't have a personal perception of, but is allowed to become essentially a thirteenth pair of ears for the jury to tell them not the meaning of what was said, not an explanation of the significance of the words, but, in fact, what the words were. And that essentially puts a confession that wasn't made, Mr. Frye would maintain, in his case, a confession in which the whole case comes down to essentially constructive possession. Lastly, the standard condition of risk notification, I just wanted to flag for the Court since I'm over here, I've argued it in terms of non-delegation. I do think that the ultimate decision here about how much Mr. Frye's liberty would be curtailed is given to the probation officer in this scenario. The Court has to conclude that he poses a risk, and then it's up to the probation officer to basically convey that, right? No. It's not completely, well, it's certainly not identical to the situation that we already dealt with in, I guess, with Bowles, right? No, that's true. It's not completely identical, but it's still, it's not the case that it's up to the probation officer to convey it. What the condition says is that the probation officer may, which gives the probation officer the decision to convey it, but that's not the case. It's the discretion whether or not to require actual notification, and it seems to me that if the district court concludes that I'm a risk, that's fine, that's one thing, but the actual decision that impacts me, do I have to tell my employer, do I have to tell my social relations, do I have to tell people at an educational institution, whatever the case may be, is the one that's made by the probation officer. Wait, so if the word may had been swapped out for must, would you have a problem? If the probation officer must? I don't think you'd have a delegation problem. The other thing I wanted to flag for the court is that there are a number of other cases with this Does that mean that every supervised release condition that says you shall do something as directed by the probation officer is unlawful as a delegation problem? I don't think that this comes down to, I think that one can see the difference between administering the details, for example, of, you know, you have to attend counseling twice weekly or whatever. There is some impact on, you know, scheduling and liberty there, but here we're talking about things that are really significant restrictions of liberty, potentially, including employability, who can associate I think there's a distinction, which is you have to report to probation as directed. A probation officer conceivably could say, I want you to report to me every single day at 9 a.m. I mean, obviously the person could challenge that before the court, but the point is it's consistent. I mean, I don't think those conditions are necessarily not onerous. Well, I think that I think, and this is what I wanted to flag for the court, and I know I'm way over here, but in some of these other cases, and I haven't raised it here, and so obviously I wouldn't anticipate that the court would consider it, but I did want to flag for the court in terms of its consideration of this case. There are previous cases in which this pending where an argument, for example, is made that for that very reason, this is not the sort of condition that ought to be or can be a standard condition. If the court determines that you pose a risk of committing further crimes against another person, that's, this is not a, I mean, it requires the court to find something particular first, right? Or an organization, but it doesn't, one of the other issues that's raised in some of the other cases more explicitly is that it doesn't define up front, doesn't require the district court up front or to notify the defendant up front about what the nature of the risk is, or to give him an opportunity to contest that, or to define the scope of the risk, which in these other cases it's been argued is a violation of Peterson, and also doesn't necessarily, precisely because it is a standardized condition, doesn't identify whether or not the particular individual is really needful of this kind of particular restriction, just as in any particular case you might not have a situation where somebody needed to report every day at 9 a.m. And with that, I will sit down, since I am way over. Thank you. Thank you. We'll now hear from the government. Ms. Richards. Sorry. May it please the court. Monica Richards on behalf of the United States of America. With regard to the motion to suppress issue, I think the court focused properly on the totality of the circumstances and the standard of review here, which is for clear error. We did have a situation where the person initially declined to permit entry, but considering the totality of the circumstances and the events that followed, the district court, in its order, adopting the magistrate judge's report and recommendation, we did not have a situation where the person initially declined to permit entry, but considering the totality of the circumstances and the facts that had been laid out by the corporation, found that, in fact, there was verbal consent given for the entry. Was the mere fact that he was on parole, and that was his listed residence at the time, a sufficient basis to just go in there anyway? I am not sure that that is fully fleshed out in this record, Your Honor. We had a situation here where the person provided that address initially as a temporary address because of lack of heat. They showed up, the probation folks showed up the next day and said there is a problem with your battery, and he was at the address, showed up again the following day, said the battery problem is not fixed yet, let's make it happen, and then showed up again, and when they showed up the third time, the bracelet was in the street. So at that point, I think that it was a little less than perfectly clear, given the circumstances, that he was actually still, that it was a valid address. I think that they properly didn't just walk right in and say, hey, we've got a parole warrant for this case. I think in other cases that might be true. But here we had he was getting mail at that address. He was. He was. He didn't have to be there for them to have the right to search his residence, right? No, and I'm not disagreeing with the court. If the court would like to find on that basis, that's fine with the government. No, it's just an alternative. But we weren't, I don't think that these officers were engaging in that, engaging it in that manner. Can you make that argument in your brief? I do, as an alternative, yes. I mean, you made that below, too, right? The judge didn't release it? Yes. But the judge found, went through and found the verbal consent was given. It just seems to me a standard condition of federal release is that they can, you know, search your residence. And the fact that you're not there, I don't think means that they can't search, especially if you're an absconder. And they had the right. They did also have the arrest warrant. Where you are, where you actually went. So, all right. I would like you to address, actually, the lay expert or the lay opinion testimony, because the judge was pretty clear that you couldn't, you could ask questions about what she recalled, but not to just have her go through the, go through the whole thing. I think that's correct. I think that's correct. But the questions as they developed, the judge left it open, as the questions as they developed, indicated with the transcript audibility, I'm sorry, the audibility hearing already having been conducted, the words already having been clear, regardless of the court's determination as to the specifics, it would be harmless error in any event, given the clarity that I want my stuff, I'll say stuff back, I want my gun. Let me bracket the argument that she testified based on her firsthand knowledge, because she was a participant in the call. But the record at trial undermines that argument. Does it not, did she not testify clearly that she doesn't, didn't have an independent recollection of the call, and that she was basically just, you know, reciting what she heard sitting there in the courtroom? I think the specific words, Your Honor, I'd agree with. The specific words. She didn't have specific recollection, but in terms of the concept of what was discussed, we were talking about the gun. Oh, but on cross, she's asked, do you remember that part of the call? And she says a little bit, no. And then the question, you heard it today, yeah. Do you remember any, Mr. Frye saying anything about a gun way back in 2016? Answer, no. So you're just testifying this morning about what you're hearing on the call now. Answer, yes. So does that not establish beyond her adventure that her testimony was based solely on what she heard in the courtroom? And at that point, did the district court, having already ruled that she wasn't permitted to do that, didn't the district court have an obligation to say you should disregard her testimony about the tape? I don't think so. Again, I rely on the fact that the specific words, the specific language we were talking about the gun, but also there was no objection. There was nothing on which to rule at that moment. So your argument is that it was Mr. Frye's obligation at that point to move to strike her testimony concerning the tape? I understand the court's point that it could have been, the court could have also done that, so the sponte, I wouldn't limit it, could mean it just to Mr. Frye's obligation. No, the court could have, yes, done that also. All right. And on the harmlessness point, it seems to rely on the instructions to basically, to the jury to consider its own interpretation of the tape, but did not those instructions also say that they should interpret the tape in light of the testimony and the evidence at the trial? And in that regard, didn't it just compound the error by suggesting that they could consider Ms. Granderson's testimony in doing that? Well, ultimately, though, the tape was fully audible, and the judge was quite clear that on the tape it was evident that the person, that Mr. Frye, the speaker, said, I want my stuff back, I want my gun. So that's the first starting point in terms of harmless error. Was it clear and obvious from the other testimony that it was a claim of ownership? Yes, indeed, it was. With regard, if there's no other questions on that issue, with regard to the Rahaif issue that's been raised, this court is reviewing for plain error. We did have a stipulation here with regard to the prior. That stipulation need not have been entered. Were there any question or dispute on Mr. Frye's behalf as to whether or not that prior stipulation was a felony? No, the stipulation simply established as a matter of fact that he had previously been convicted of a felony. It didn't speak to his knowledge of it at the time of the offense. Well, the entry of the stipulation, though, my, excuse me, government's take on that, the entry of the stipulation, from the entry of the stipulation, the jury could infer knowledge of that conviction. How? I mean, Judge Sullivan spoke to this issue. I mean, the jury could infer knowledge of that conviction. The fact that the defendant concedes, as a matter of fact, at the time of trial, that he had been convicted of a felony doesn't answer the question. I mean, otherwise Rahaif is meaningless, and it means that anytime there's proof of a felony, then knowledge follows therefrom. I suggest Rahaif is in fact meaningless with regard to these sorts of convictions. With regard to the felony convictions, Rahaif was the immigration status, and there it was arguable that the immigration status is something that might not have been known. Here, we had a stipulation explicitly entered on the record with regard to the felony conviction. If he didn't know about the prior conviction, he didn't have to enter the stipulation. A lot of people don't know whether it's a misdemeanor or a felony. They know they didn't serve much time, but it technically was a sentence that could have been more under the statute. So it is a felony, but they didn't know about it. You hear about that certainly at sentencings of people all the time, right? They can't remember whether it was a misdemeanor, and it turns out that it was one or the other. And that would have been a valid ground, sir, Your Honor, respectfully, that would have been a valid ground for an affirmative defense with regard to this case. That would have been an element of proof that was lacking. No, but it wasn't an element at the time of the case, right? I mean, that's the problem. Rahaif comes down and says, we now have this new element, which is knowledge of the fact that you were subject, that you committed a felony. There's no way, Your Honor, respectfully, on this record, this case would be the classic law school case, then, in which case, what if they were on, what if they just absconded from supervision and cut off their bracelet? But let me give you a hypothetical in a pre-Rahaif world where a defendant is charged with possession of a gun as an illegal alien, right? Same crime as in Rahaif. And there's pretrial litigation concerning whether the person actually is here illegally, and it's resolved against the defendant. And so come trial, he stipulates based on the pretrial ruling that he is, in fact, an illegal alien, so as to prevent any proof on that issue. So that issue is taken off the table by virtue of the stipulation. Is it your argument that even though that might have been arguable, because of the stipulation, the Rahaif requirement is satisfied? Well, it wouldn't be here on plain air review, first off, respectfully. That wouldn't be here. Well, it wouldn't be because based on the law at the time, the defendant doesn't make the argument that the government was required to prove knowledge. It was fully vetted, though. I'm sorry, maybe I misunderstood. I thought the court was suggesting it was fully vetted. The fact of somebody's legality in the country was fully vetted, not knowledge of that. I guess I don't see the distinction. I'm sorry. But in the case of a felony conviction where you've pled guilty to the conviction, where you've signed in the record on page, the government appendix, page three, where you've signed something before you're released on supervision saying that you shall not carry a gun, where you then cut off your ankle monitor and abscond, I just find that... None of that was in the record before the jury, correct? So doesn't the evaluation of the third and fourth prongs of the Ilano tests require us to look to the evidence at trial? But it was absolved. I'm sorry, but the proof wasn't necessary because of the stipulation. That's what we're circled right back to. I certainly understand the bind, but my question is under the third and fourth prongs, do we not have to look solely at the evidence presented to the jury? But that's where the concession comes in, that it was plain and that it was error, but certainly not a concession that the outcome of the proceeding would have been different, which is the third and fourth steps of the plain error review. There's no basis on this record under which the circumstances would have been different given the facts of this case. I see that I'm out of time unless there's any questions with regard to the sentencing issues. All right. Thank you. Thank you. Now I hear from Mr. Vogelbaum. Just briefly, Your Honors. Starting from the beginning of the questioning, regarding the audibility of the conversation, there's really not, I mean, it's the government's contention that, what I understand the government's contention to be is that because the district court itself ultimately found the tape sufficiently audible, then necessarily every juror understood it and was able to say exactly what the district court judge did or the same thing or, you know, a claim of ownership, I believe, was the phrase that was used. But, of course, there's no way that we can really know that. But all these arguments were made to the jury, right? It's inaudible and she has no independent recollection of anything and you decide jury, right? I mean, wasn't that the argument at trial? But only after, of course, we have this long exchange where Ms. Anderson does, in fact, I think, say unequivocally, I have no, you know, personal recollection. But that's what she said on cross. On direct, I mean, you know, it's hard to get too annoyed at the government because the direct basically tries to refresh her with the recording and then she blurts out, sounds like you said gun. Now that could have drawn an objection, but it didn't. That could have drawn a motion to strike, but it didn't. But instead, on cross, I think, the defense counsel, was it you, Billo? I don't remember. It was not me. No, I didn't think. But I thought they did a good job of pointing out that she's just, she doesn't remember any of this. And that was pretty effective. Well, I think there actually, I may be mistaken, but I think there actually was, there was an objection sort of in the middle of that line of, or at least a similar line of questioning. It's Appendix 431 and 432 by defense counsel. Okay, so the AUSAS, okay, so what did he say to you at that point in the defense's objection? That's not objectionable, right? If she has an independent recollection of what he said, how would that be an objectionable question? What's objectionable is that she didn't answer the question with an independent recollection. She answered the question with what she thinks she just heard on the tape. Understood. And then, of course, that's what occasions the cross that the court has pointed to. And it's also what, but this is also rendered problematic, as Your Honor noted, by the jury instructions which specifically emphasize or have the tendency to emphasize the testimony about what was said on the tape as opposed to simply telling the jury, you decide. So, you know, I think if we're going to speculate and draw inferences, what we have ordinarily, we would presume jurors follow instructions. So the instruction here is, you know, listen to the testimony about this tape, you know, when you're making your decision about, you know, what its significance is. And to me... Part of the testimony, as Judge Sullivan's questions highlight, is that she had no independent recollection and she was just hearing it as well. So at that point, doesn't the jury, the jury is not going to necessarily defer to her assessment of it because, and to the extent that they do, it's because she was a firsthand participant. So, in other words, all these things are aired for the jury. Why isn't it, therefore, up to the jury to make a decision about what weight to put on it? Because I think that, I think the Supreme Court has recognized and courts generally recognize that what sounds like a purported confession is a particularly powerful piece of evidence, particularly, I think, in a case where, like here, you have the district court judge sort of, you know, I'm sure not intending any harm, but, you know, sort of highlighting it for the jury. You know, you should listen to what has been said about this tape and when you're deciding its significance. There were a lot of witnesses who testified about the tape, about how it was made and how it was, you know, the audibility issues of it. There were a lot of, there was, I mean, it wasn't just Granderson who testified about it. No, but its sole significance, of course, lies, I mean, it's perhaps not its sole, but its major significance, its overriding significance lies in the fact that it does purport to be the only piece of evidence sort of out of Mr. Fry's mouth concerning this weapon and it purports to be a claim of ownership as the government. No, no, I'm not suggesting that it's not an important piece of evidence. I'm suggesting that the instruction is not a misleading one or an erroneous one. Urging the jury to consider the testimony about this tape, which is a really important piece of evidence, is a proper instruction, right? I think in the context of this, I think in the context of this case, the language of that instruction, I don't think it's problematic precisely because there was, I think, this definitive ruling that Ms. Granderson was not simply to parrot what was on the tape or to interpret what was on the tape for the jury, but to testify from her own recollection about it. And then this instruction is given that necessarily, I mean, bears on the main salience of the piece of the evidence. The only other two things I wanted to say were regarding the stipulation, you know, I think, I believe it's the Johnson case from the Supreme Court that says in a situation like this where the law is abundantly clear amongst all the circuits at the time, you're not required to, you know, make, pile pointless objections on pointless objections, I think is what the Johnson case says, you know, which is the rationale for the stipulation in the first place. And finally, regarding just the alternative parole rationale for the search. Let me ask you on that. Is it your position if a defendant were convicted of seven prior felonies and had served, you know, four years on each of them and, you know, in reality there is no conceivable argument to be made that the defendant was not aware at the time of the offense that he had been previously convicted of a felony, but succeeds in keeping all of that from the jury and limiting proof on the pre-rehafe element to a simple stipulation saying, as of the date of the offense, the defendant was previously convicted of a felony. Is it your position that the plain error standard is met because the evidence before the jury is limited to the stipulation? Well, that's the other important point. I think your Honor was exactly right, that the review here has to be limited to the evidence that was before the jury. And so the answer is yes. Where somebody has spent his entire adult life in prison. On your hypothetical, yes. And I think that's, I think the government is right about one thing is that that's going to be a relatively small universe of cases, probably. Not so sure. But, in any event, I think there's another panel that's addressing that very issue ahead of us. And the only final thing I wanted to say was regarding the alternative parole rationale for the search. The government in its brief, and I talk about this in my brief a little bit, calls it a suspicionless search. But this Court, I think, is huge to the standard articulated by the New York, the top appellate court in New York. I'm sorry, I'm not from here. I'm not forgetting the name. You're sick. Thank you. Not to be confused with the Supreme Court. The Huntley standard, which still requires some modicum of suspicion, although it's phrased a little bit differently. But isn't there a modicum? I mean, he's a fugitive at this point. They've found his cut ankle bracelet. They know he's on the run. And so wouldn't it be relevant to go into his residence to figure out maybe if there's evidence there that shows where he went? Well, so I was primarily pushing back on the idea of suspicionlessness. But in terms of that, the Huntley standard also includes this requirement of under the particular circumstances, right? And it seems to me that Your Honor got to some very salient points, which is that, you know, they've looked for this guy three times here at this address already. And it's almost, I think, two months since the point where they find the cut off ankle bracelet. They've never found him there. They've never apparently found any indication that he was still there. So at some point, I do think that the repeated dissipation of suspicion in that way does take it outside of the realm of the suspicion and the relationship to supervision that's required under the Huntley standard. Okay. We'll reserve the decision. Thanks very much to both of you.